IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

TIMOTHY C. McCARTHY, D.V.M.,

        Plaintiff,            CV-10-334-ST

   v.            OPINION AND ORDER

STATE FARM FIRE AND CASUALTY
COMPANY, a foreign corporation, and ZURICH
AMERICAN INSURANCE COMPANY, a foreign
corporation,

        Defendants.

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Timothy C. McCarthy, D.V.M. ("McCarthy"), originally filed this action on February 10, 2010, in the Circuit Court of the State of Oregon for the County of Multnomah, Case No. 1002-02517. McCarthy alleges that two insurers, State Farm Fire and Casualty Company ("State Farm") and Zurich American Insurance Company ("Zurich"), breached their

1 - OPINION AND ORDER

insurance contracts and violated their duties of good faith and fair dealing by refusing to defend him in arbitration proceeding commenced in August 2009.

On March 25, 2010, Zurich removed McCarthy's state court case to this court, alleging jurisdiction under 28 USC § 1332. A week later, an amended complaint was filed in the arbitration proceeding.[1]

In response to McCarthy's claims, both State Farm and Zurich allege counterclaims seeking judicial declarations that they had no duty to defend McCarthy with respect to the claims asserted in the arbitration proceeding and did not breach any tortious or contractual duty of good faith and fair dealing.

Zurich alleges that McCarthy is an Oregon resident. A person's "residence" does not equal "citizenship" for purposes of diversity jurisdiction,[2] and the Notice of Removal does not allege McCarthy's citizenship. However, this court assumes, without deciding, that McCarthy is also a citizen of Oregon for purposes of diversity jurisdiction based on the lack of any jurisdictional challenge. Zurich is a New York company authorized to issue insurance policies in Oregon, and State Farm is an Illinois corporation authorized to do business in Oregon. The amount in controversy exceeds $75,000, exclusive of interest and costs. Thus, this court has jurisdiction pursuant to 28 USC § 1332.

---

[1] Because that amendment was filed after removal of this case to this court, it arguably is not a pleading this court should consider when determining whether State Farm or Zurich breached a duty to defend in September 2009. However, neither party takes that position, and McCarthy's Complaint alleges an ongoing breach of their duties. Thus, this court considers both the original and amended complaints filed in the arbitration proceeding.

[2] "It is black letter law that, for purposes of diversity, '[r]esidence and citizenship are not the same thing.'" *Seven Resorts, Inc. v. Cantlen*, 57 F3d 771, 774 (9th Cir 1995), citing *Mantin v. Broadcast Music, Inc.*, 244 F2d 204, 206 (9th Cir 1957).

All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c). Now pending before this court are State Farm's Motion for Partial Summary Judgment (docket #13), Zurich's Motion for Partial Summary Judgment Regarding the Duty to Defend (docket #15), and McCarthy's Cross Motion for Partial Summary Judgment Regarding Duty to Defend (docket #22). For the reasons that follow, State Farm's and Zurich's motions are granted, and McCarthy's cross-motion is denied.

## STANDARDS

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law." The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial." *Id* at 324, citing FRCP 56(e). The court must "not weigh the evidence or determine the truth of the matter, but only [determine] whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted). A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir), *cert denied*, 493 US 809 (1989) (emphasis in original) (citation omitted). The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F2d 626, 630 (9th Cir 1987). The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party." *Id* (citation omitted).

///

3 - OPINION AND ORDER

## BACKGROUND

### I. Purchase of McCarthy's Business

McCarthy is a veterinary surgeon and was the sole shareholder of an Oregon professional corporation known as Timothy C. McCarthy, D.V.M., P.C. ("McCarthy's P.C.") McCarthy was practicing veterinary medicine under the assumed business name "Surgical Specialty Clinic for Animals" ("Surgical Specialty Clinic"). Complaint, ¶ 3.[3] In 2008, a veterinary hospital corporation, VCA Antech ("VCA"), purchased McCarthy's practice through a stock purchase agreement between McCarthy and two of VCA's wholly owned Oregon subsidiaries, Pets' RX, Inc. and Oregon IVA, P.C. ("Oregon IVA"). Joint Stipulation, Ex. 3, pp. 18-37. The Stock Purchase Agreement was one component of a series of other integrated agreements which also included an Employment Agreement (*id*, pp. 38-45), a Non-Competition Agreement (*id*, pp. 46-50), and a Lease Agreement (*id*, pp. 51-58).

The Stock Purchase Agreement closed on April 9, 2008. Just prior to closing, McCarthy's P.C. was required to convert to an Oregon business corporation. Stock Purchase Agreement, ¶ 5.1. Pets' RX, Inc. agreed to purchase the stock of the new business corporation and merge McCarthy's practice into its existing veterinary practice. *Id*, p. 1. Pursuant to the Employment Agreement, McCarthy then became an employee of Oregon IVA to provide veterinary services for an initial period of five years. Employment Agreement, ¶ 3.1. Three of the four integrated agreements provide that "[a]ny dispute or claim arising hereunder shall be settled by arbitration before three (3) arbitrators . . . [and the] majority decision of the arbitration

---

[3] The Oregon Secretary of State Corporation Division lists McCarthy as the individual registrant for two assumed business names, including "Surgical Specialty Clinic for Animals" and "Surgical and Medical Specialty Clinic for Animals" for two years between July 26, 2006, and July 26, 2008. *See* http://www.filinginoregon.com/index.htm (last accessed 10/4/2010).

panel shall be final, binding, and conclusive on all parties . . . and shall not be subject to judicial review." Stock Purchase Agreement, ¶ 11.4; Employment Agreement, ¶ 7.4; Non-Competition Agreement ¶ 7.4.

## II. The Underlying Arbitration

Pets' RX, Inc. and Oregon IVA (collectively, "Pets' RX") filed a complaint with the American Arbitration Association ("AAA") against McCarthy on August 10, 2009. Joint Stipulation, ¶ 3 ("Arbitration Complaint"). In the First Claim for Relief, the Arbitration Complaint alleged that McCarthy breached: (1) the Employment Agreement (Count 1); (2) the Purchase Agreement (Representations) (Count 2); (3) the Purchase Agreement (Warranties) (Count 3); and (4) the implied covenant of good faith and fair dealing (Count 4). It also alleged claims for securities fraud (Second Claim for Relief), fraud/deceit (Third Claim for Relief), negligent misrepresentation (Fourth Claim for Relief) and an alternative claim for equitable rescission (Fifth Claim for Relief) based on misrepresentation (Count 1), mutual mistake (Count 2), and Frustration of Purpose (Count 3). In the allegations pertaining to all claims, paragraph 23 of the Arbitration Complaint alleged that shortly after entering into the integrated agreements with Pets' RX, McCarthy "began undermining the terms of the integrated agreements through" the following conduct:

>   a) Dr. McCarthy repeatedly disparaged the staff, veterinary doctors, and management of Pets' RX,
>   b) Dr. McCarthy verbally threatened Pets' RX staff,
>   c) Dr. McCarthy repeatedly made unreasonable demands of Pets' RX staff, veterinary doctors and management,
>   d) Dr. McCarthy made unsubstantiated and inaccurate allegations about the medical competency of other Pets' RX staff and veterinary doctors, and

> e) Dr. McCarthy failed to perform his medical service
> responsibilities in a competent and professional manner.

A week after this case was removed to this court, on March 31, 2010, Pets' RX filed an Amended Complaint in the AAA arbitration against McCarthy, alleging the same claims but amending certain allegations. *Id*, ¶ 4 ("Amended Arbitration Complaint"). Paragraph 23 was amended slightly to allege that McCarthy "began undermining the terms of the integrated agreements through" the following conduct:

> a) Dr. McCarthy repeatedly questioned the action of the staff, veterinary doctors, and management of Claimants,
> b) Dr. McCarthy acted in a threatening manner toward Claimants' staff,
> c) Dr. McCarthy repeatedly made unreasonable demands of Claimants' staff, veterinary doctors and management,
> d) Dr. McCarthy made unsubstantiated and inaccurate allegations about the medical competency of other Claimants' staff and veterinary doctors, and
> e) Dr. McCarthy failed to perform his medical service responsibilities in a competent and professional manner.

The arbitration complaints also allege that in September 2008, McCarthy left his employment with Oregon IVA on medical leave, refused to return to work in the summer of 2009, and has never returned to work with Oregon IVA. Arbitration Complaint, ¶¶ 25-26; Amended Arbitration Complaint, ¶¶ 25-26.

An arbitration hearing was held May 17-19, 2010. Anuta Decl., ¶ 10. On June 10, 2010, the arbitrators issued their decision. *Id*, ¶ 11 and Ex. 13.

### C. **The Insurance Policies**

State Farm issued a Business Policy to Surgical Specialty Clinic, an assumed business name for McCarthy, policy number 97-BB-F342-6 ("the State Farm Policy"). Joint Stipulation,

Ex. 2. The State Farm Policy was in force during the time of the events described in the arbitration complaints.

Zurich issued a Veterinary Professional Liability Policy to McCarthy through certificate number 07757 to the master policy number EOL 5241302-03 ("the Zurich Policy"). *Id*, Ex. 1. The Zurich Policy was in force during the time of most of the events described in the underlying arbitration complaints.

McCarthy tendered defense of the arbitration proceeding to State Farm which initially defended McCarthey and then later terminated that representation. Anuta Decl., ¶¶ 2-3, 7, 9, and Exs. 5, 6, 10, 12. McCarthy then tendered defense to Zurich which also declined. *Id*, ¶¶ 4-6, 8, 9, and Exs. 7-9, 11, 12.

## ANALYSIS

### I. Legal Standards

Because jurisdiction is premised on diversity of citizenship, this court must apply the substantive law of Oregon in resolving the dispute. *Hayward v. Centennial Ins. Co.*, 430 F3d 989, 991 (9th Cir 2005) (applying state law to an insurance dispute where jurisdiction was based on diversity of the parties). Under Oregon law, the analysis of "[w]hether an insurer has a duty to defend an action against its insured depends on two documents: the complaint and the insurance policy." *Ledford v. Gutoski*, 319 Or 397, 399, 877 P2d 80, 82 (1994) (citation omitted). "An insurer has a duty to defend an action against its insured if the claim against the insured stated in the complaint could, without amendment, impose liability for conduct covered by the policy." *Id* at 399-400, 877 P2d at 82 (citations omitted). "In evaluating whether an insurer has a duty to defend, the court looks only at the facts alleged in the complaint to determine whether they

7 - OPINION AND ORDER

provide a basis for recovery that could be covered by the policy [.]" *Id* at 400, 877 P2d at 82. "The insurer has a duty to defend if the complaint provides *any basis* for which the insurer provides coverage." *Id* at 400, 877 P2d at 83 (citation omitted) (emphasis in original).

"Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured." *Id* at 400, 877 P2d at 83; *see also Marleau v. Truck Ins. Exchange*, 333 Or 82, 91, 37 P3d 148, 153 (2001) ("if the complaint is unclear, but may be reasonably interpreted to include an incident within the coverage of the policy, [then] there is a duty to defend . . . . It is the substance of the complaint, not its form, that is at the heart of the inquiry.") (internal quotations, citations omitted).

## II. Duty to Defend – State Farm

### A. Whether McCarthy is an "Insured"

As clarified in the briefing and at oral argument, whether State Farm owed McCarthy a duty to defend the arbitration proceeding turns on two issues: (1) whether McCarthy was an insured under the terms of the policy; and (2) whether the allegations in the underlying arbitration proceeding alleged sufficient facts to constitute a claim for defamation under the personal injury coverage provisions of the State Farm Policy.

The question of whether McCarthy was an insured under the State Farm policy raises thorny issues about the legal status of the named insured (Surgical Specialty Clinic for Animals) and how coverage was affected by the closing of the Stock Purchase Agreement and resultant change in McCarthy's status as the owner of his McCarthy's P.C. to an employee of Pets' RX.[4]

---

[4] The critical provisions with regard to this argument are the "Designation of Insured" provisions in the State Farm Policy. Joint Stipulation, Ex. 2, pp. 40- 42. The State Farm Policy consists of an automatic renewal of a prior policy which had

(continued...)

Ultimately, however, this court need not decide that issue. As discussed below, a careful review of arbitration complaints reveals that they will not "without amendment . . . impose liability for conduct covered by the policy." *Ferguson v. Birmingham Fire Ins.*, 254 Or 496, 507, 460 P2d 342 (1969). Accordingly, assuming without deciding that McCarthy is an "insured," State Farm nevertheless did not breach its duty to defend him under Oregon law.

### B. Defamation Claim

The State Farm Policy contains the following business liability coverage provision:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury, property damage, personal injury** or **advertising injury** to which this insurance applies. . . . This insurance applies only:
> 1. to **bodily injury** or **property damage** caused by an **occurrence** which takes place in the **coverage territory** during the policy period;
> 2. to **personal injury** caused by an **occurrence** committed in the **coverage territory** during the policy period. The **occurrence** must arise out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;
> 3. to **advertising injury** caused by an **occurrence** committed in the **coverage territory** during the policy period. The **occurrence** must be committed in the course of advertising your goods, products or services.

Joint Stipulation, Ex. 2, p. 24 (emphasis in original).

McCarthy alleges that State Farm breached its duty to defend based on the coverage provided for an "advertising injury." Complaint, ¶ 10. However, that coverage only applies to

---

⁴(...continued)
been in place for a prior period of time not disclosed in the record. *Id*, Ex. 2, p. 2. The renewal took place on April 9, 2008, the same date as the closing of the Stock Purchase Agreement. The named insured in the State Farm Policy is "Surgical Specialty Clinic," an assumed business name that the parties agree was registered to McCarthy, not to McCarthy's P.C. *Id*, ¶ 2 and Ex. 2, p. 39. However, both the Stock Purchase Agreement (¶ 5.6) and the arbitration complaints (¶ 9) erroneously state that "Surgical Specialty Clinic" belong to McCarthy's P.C., not to him individually. The parties vehemently disagree how these undisputed facts play out in the "Designation of Insured" provisions of the State Farm Policy.

occurrences "committed in the course of advertising your goods, products or services." No such allegation is made in the arbitration complaints. Furthermore, McCarthy makes no claim that the arbitration complaints triggered a duty to defend based on "bodily injury or property damage." Instead, the dispute between the parties centers on whether the arbitration complaints allege a claim for defamation which falls within the coverage for "personal injury." The State Farm Policy defines "personal injury" as including, among other things, an "injury . . . arising out of . . . oral or written publication of material that slanders or libels a person or organization or disparages a person's or organizations's goods, products or services." Joint Stipulation, Ex. 2, p. 34.

The arbitration complaints do not allege a separate claim for defamation. Nevertheless, McCarthy contends that they may reasonably be interpreted to allege a claim for defamation based on paragraph 23(d) that McCarthy "made unsubstantiated and inaccurate allegations about the medical competency of [Pets' RX] staff and veterinary doctors." Despite this allegation, McCarthy faces insurmountable hurdles in arguing that a duty to defend was triggered with respect to the State Farm Policy.

"To state a claim for defamation, the complaint must state facts sufficient to establish that the defendant published to a third person a defamatory statement about plaintiff." *Marleau*, 333 Or at 94, 37 P3d at 155, citing *Wallulis v. Dymowski*, 323 Or 337, 343, 918 P2d 755, 758 (1996). Nowhere do the arbitration pleadings allege any publication of defamatory statements by McCarthy to any third party. Paragraph 23 is incorporated into all the arbitration claims by reference. However, those claims allege only breach of the employment contract, various breaches of the purchase agreement with Pets' RX, securities fraud, fraud/deceit, and negligent

10 - OPINION AND ORDER

misrepresentation relating to McCarthy's intent or ability to perform the terms of the employment and purchase agreements. Pets' RX sought damages or, alternatively, equitable rescission of the agreements and a refund of all moneys paid to Pets' RX based on McCarthy's failure to perform his contractual duties. Consistent with these claims relating to breaches of the terms of the integrated agreements, the full text of paragraph 23 alleges that "McCarthy began undermining the terms of the integrated agreements through his conduct." In other words, the effect of the alleged "unsubstantiated and inaccurate allegations" made by McCarthy was to undermine the integrated agreements.

Assuming that the allegation could be interpreted as statements made by McCarthy to defame Pets' RX staff and veterinary doctors, nowhere do the arbitration complaints allege that McCarthy ever published the unsubstantiated and inaccurate allegations to third persons as required to state a defamation claim. As does a defamation claim, the State Farm Policy requires that the injury arise out of "publication" of the oral or written material. McCarthy argues that an allegation of publication to third parties is implicit because other portions of the arbitration complaints allege that Pets' RX suffered a "loss of goodwill in the community." Amended Arbitration Complaint, ¶¶ 34, 42, 45, 48, 63, 68.[5] However, the "loss of goodwill" language is tied directly to Pets' RX's allegations that it was damaged as a result of (and specified claims for) breach of the Employment Agreement (¶ 34), breach of the Stock Purchase Agreement (¶ 42), breach of a Purchase Agreement warranty (¶ 45), breach of the implied covenant of good faith to perform contractual obligations in manner consistent with the parties' justified expectations

---

[5] The "loss of goodwill" language was not included in the Arbitration Complaint, but was added in the Amended Arbitration Complaint filed on March 31, 2010, a month after McCarthy filed this action in state court and a week after the case was removed to this court.

11 - OPINION AND ORDER

(¶ 48), and intentional or negligent misrepresentations regarding his intent and capability of performing his obligations under the employment agreement (¶¶ 63, 68). The only claims subject to arbitration and for which Pets' RX can recover damages are claims arising under the integrated agreements. Moreover, nowhere does the Amended Arbitration Complaint specifically seek damages relating to the alleged "loss of goodwill." Instead, Pets' RX sought $3.3 million, consisting of $1.5 million in lost profits, $500,000.00 for loss of value of the entity, $45,000.00 in costs incurred with the former location and personnel, $355,000.00 in additional construction costs, and $900,000.00 in amounts paid to McCarthy. Amended Arbitration Complaint, ¶ 34. McCarthy is inappropriately attempting to convert claims arising under various contracts into a defamation claim.

In sum, assuming McCarthy was an "insured" under the State Farm policy, State Farm nevertheless did not breach its duty to defend him under Oregon law. The arbitration complaints did not allege a defamation claim and may not reasonably be interpreted as including a defamation claim. Accordingly, the arbitration complaints do not trigger coverage for a "personal injury" as that term is defined in the State Farm Policy.

### III. Duty to Defend – Zurich

#### A. Veterinary Incident or Professional Veterinary Services

Under the Zurich Policy, Zurich has "the right and duty to defend the Insured against any Claim based on a Veterinary Incident seeking damages that are covered by this policy." Joint Stipulation, Ex. 1, p. 4. Zurich argues that McCarthy has no coverage under its policy because the underlying arbitration pleadings do not allege any claim based on a "Veterinary Incident."

///

12 - OPINION AND ORDER

The Zurich Policy defines a "Veterinary Incident" as:

> [A]ny:
> 1. Malpractice or negligent act, error or omission;
> 2. Utterance or publication of a libel or slander, or other defamatory or disparaging material; or
> 3. Bodily Injury or Property Damage caused by the Product of the Named Certificate Holder
> Arising out of the course of furnishing Professional Veterinary Services.

*Id*, p. 13.

The relevant portion of the definition of "Professional Veterinary Services" is "those services normally performed by a licensed veterinarian in good standing." *Id*, p. 12. "The majority of courts to address the issue have concluded that the term 'professional services' unambiguously refers to services unique to a specific profession and excludes the business aspects of a professional practice that a professional happens to perform." *St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F3d 893, 898-99 (11th Cir 2009) (citing cases).

The focus of the "Veterinary Incident" definition is whether the incident arose in the course of furnishing services normally performed by a licensed veterinarian. "A professional service is an act taken in the context of the person's profession." *Hedmann v. Liberty Mut. Fire Ins. Co.*, 158 Or App 510, 514, 974 P2d 755, 757 (1999). Thus, the issue is whether the arbitration pleadings allege claims based on McCarthy's furnishing of veterinary services. The arbitration case was not filed by a pet owner, but was instead filed by McCarthy's employer and the purchaser of his veterinary practice. Each of the claims in the arbitration pleadings is based on McCarthy's conduct in undermining the terms of the integrated agreements. As such, each

13 - OPINION AND ORDER

claim relates to McCarthy's alleged breaches and misrepresentations in connection with entering into and performing under those agreements.

McCarthy attempts to bring the arbitration complaints within the scope of the Zurich Policy by arguing that, although he may not have been performing veterinary surgery at the time of the alleged misconduct, he was nevertheless in the process of operating a veterinary clinic and providing veterinary services in a "competent and professional" manner. In particular, he contends that the conduct of which he was accused, namely "questioning" or making "demands" of Pets' RX staff, veterinary doctors, and management regarding the operations of the clinic, falls squarely within his professional obligations as a veterinarian. However, services normally performed by a licensed veterinarian to provide medical services to animals contrast with engaging in conduct that may in some way relate to the business aspects of operating a veterinary practice or to performance under the integrated agreements between McCarthy and Pets' RX.

Accordingly, this court concludes that the arbitration complaints do not allege claims based on a "Veterinary Incident" as that term is defined in the Zurich Policy. Moreover, even if they did, coverage under the Zurich Policy is precluded by an exclusion, as discussed next.

### B. Exclusion for Breach of Employment Contract

The Zurich Policy excludes from coverage "any Claim based upon or arising out of . . . [a]ny actual or alleged: breach of an employment contract or agreement . . . ." Joint Stipulation, Ex. 1, p. 6. That exclusion "applies whether the Insured may be liable as an employer or in any other capacity." *Id*. McCarthy asserts that this exclusion is limited to claims by an employee of the insured against the insured. However, nothing in the exclusion indicates that it is so limited.

The text of the exclusion expressly applies to *any* actual or alleged breach of *any* employment contract or agreement.

Nevertheless, McCarthy contends that the arbitration allegations can be read to encompass claims for defamation and negligence. For the reasons discussed above, the allegations are insufficient to trigger a duty to defend based on a potential defamation claim. To encompass a potential claim for negligence, McCarthy cites the allegations in paragraph 23(e) that he "failed to perform his medical service responsibilities in a competent and professional manner." However, in the context of a contractual relationship, and absent physical injury to the claimant, a negligence claim requires "[s]ome source of duty outside the common law of negligence." *Hale v. Groce*, 304 Or 281, 284, 744 P2d 1289, 1290 (1987). Accordingly, a plaintiff must allege and prove a "special relationship or status that imposed a duty on the defendant beyond the common-law negligence standard." *Harris v. Suniga*, 344 Or 301, 308, 180 P3d 12, 16 (2008); *see also*, *Onita Pac. Corp. v. Trustees of Bronson*, 315 Or 149, 159-66, 843 P2d 890, 896-900 (1992) (*en banc*). An employment relationship, in and of itself, does not impose a special duty of care. *Conway v. Pac. Univ.*, 324 Or 231, 243, 924 P2d 818, 826 (1996). The arbitration complaints do not allege any special relationship or status between McCarthy and Pets' RX beyond the terms of the integrated agreements. Thus, the allegations also are insufficient to trigger a duty to defend based on a negligence claim.

Accordingly, nothing in the arbitration complaints avoids the reach of the exclusion for claims arising out of alleged breaches of the Employment Agreement between McCarthy and Oregon IVA.

///

## IV. Implied Duty Claim

McCarthy also seeks summary judgment that State Farm, by withdrawing its defense, and Zurich, by refusing to defend, breached an implied duty of good faith and fair dealing. State Farm initially undertook to defend McCarthy, but expressly reserved its right to withdraw from the defense if it determined that it had a right to deny coverage. Parks Decl., Ex. 1, p. 4. Two weeks later, State Farm withdrew its defense. Anuta Decl., Ex. 6. Zurich denied that its policy provided coverage for defense of the arbitration claims at the outset. *Id*, Ex. 8.

The "obligation of good faith does not vary the substantive terms of the bargain . . . nor does it provide a remedy for an unpleasantly motivated act that is expressly permitted by contract . . . ." *United States Nat'l Bank v. Boge*, 311 Or 550, 567, 814 P2d 1082, 1092 (1991). Thus, where there is no coverage, a "claim for bad faith denial of coverage is . . . foreclosed at the outset." *Richardson v. Guardian Life Ins. Co. of Am.*, 161 Or App 615, 624, 984 P2d 917, 923 (1999). As discussed above, neither the State Farm Policy nor the Zurich Policy triggered a duty to defend McCarthy in the arbitration proceeding. Accordingly, the claim for a breach of the covenant of good faith and fair dealing is foreclosed.

## V. Conclusion

The claims alleged in the arbitration pleadings did not trigger a duty to defend by either State Farm or Zurich. Assuming, without deciding, that McCarthy is an "insured" under the State Farm Policy, the arbitration complaints fail to allege sufficient facts to constitute a claim for defamation under the personal injury coverage provisions of the State Farm Policy. With respect to the Zurich Policy, the allegations in the arbitration complaints do not allege any claim which may properly be construed as arising from any "Veterinary Incident." Moreover, even if

they did, they would be excluded as claims arising out of a breach of "any employment contract or agreement." Finally, the undisputed record provides no basis for a claim for breach of the implied covenant of good faith and fair dealing. Thus, State Farm and Zurich are entitled to summary judgment against all of McCarthy's claims.

## **ORDER**

State Farm Fire and Casualty Company's Motion for Partial Summary Judgment (docket #13) and Zurich American Insurance Company's Motion for Partial Summary Judgment Regarding the Duty to Defend (docket #15) are GRANTED. McCarthy's Cross Motion for Partial Summary Judgment Regarding Duty to Defend (docket #22) is DENIED.

DATED this 5th day of October, 2010.

___/s/ Janice M. Stewart___  
Janice M. Stewart  
United States Magistrate Judge